# E. LYNNE PAINTER, MORDECAI COCKEY, CHAS. SCHLAFFER, Appellants, *vs.* CHARLES L. MATTFELDT, HENRY P. MANN, WILLIAM F. COGHLAN, The Board of County Commissioners of Baltimore County, Appellees.

*Legislature: plenary power of—. Constitutional Law: powers of the three departments of government; power and duty of courts. Statutes: constitutionality of—; construction; title of statutes; misleading; statutes void in part. Chapter 345 of the Acts of 1912, relating to good roads in Baltimore County.*

It is within the power, and it is the duty of courts of equity to grant relief to taxpayers against a statute that is *ultra vires* and greatly injurious to the complainant as taxpayers.

p. 471

Every presumption favors the validity of a statute, and a statute can not be declared void unless it plainly contravenes some provision of the Constitution; if there is merely a reasonable doubt as to the constitutionality of an Act, the Act should be sustained.                    p. 472

Plenary power in the legislature for all purposes of civil government is the rule; a prohibition to exercise a particular power is an exception.                    p. 472

The Constitution apportions the power of government, but does not make any of the three departments subordinate to the others when exercising the trusts committed to it.    p. 472

Where a Court declares a statute unconstitutional, it is not because of any superior power or dignity which it exercises, but, being required to declare what the law is in the case

before it, the Court must enforce the Constitution as the paramount law whenever a legislative enactment comes in conflict with it. p. 472

But the courts will not declare an Act unconstitutional merely because it seems unwise or inexpedient, nor strike it down merely because it will operate harshly upon the persons affected by it. p. 473

Section 29 of Article 3 of the Constitution, declaring that a statute shall embrace but one subject to be clearly described in the title, is mandatory; yet while the title must indicate the subject, it need not give an abstract of the Act, nor mention the means and the methods by which the purpose is to be accomplished. pp. 474, 475

But the title must not be misleading; it must not apparently limit the enactment to a much narrower scope than the body of the Act imposes. p. 474

A statute may be valid, although certain of its provisions are unconstitutional and void. p. 474

But if the valid provisions of a statute are inseparably connected in substance with provisions that are void, the whole Act should be declared unconstitutional. p. 475

Chapter 345 of the Acts of 1912, relating to good roads in Baltimore County, which by its title apparently limits the cost to one million and a half dollars there mentioned, while in fact liable to involve and burden the county with costs largely in excess of that sum, is therefore unconstitutional and void. pp. 479, 480

*Decided January 17th, 1913.*

Appeal from the Circuit Court for Baltimore County, in Equity (DUNCAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and STOCKBRIDGE, JJ.

*D. G. McIntosh* and *T. Scott Offutt* (with whom was *Edward H. Burke* on the brief), for the appellant.

*Osborne I. Yellott,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The General Assembly of Maryland, at its session of 1912, passed an Act for the construction of an improved system of public roads and bridges in Baltimore county. This Act is Chapter 345 of the Acts of 1912. It provided, among other things for a bond issue of one million five hundred thousand dollars to be a lien upon the assessable property of the county. The County Commissioners were empowered and directed by the Act to borrow on the credit of the county that sum of money, and as evidence of such loan to issue coupon bonds to the amount of the loan, which bonds should be signed by the President of the Board of County Commissioners of Baltimore County and by the treasurer of said county, and sealed with the corporate seal of the County Commissioners, and to be known as "Baltimore County Road Bonds" and to be numbered and issued in denominations of one thousand dollars each, and to be forever exempt from all county and municipal taxes of and in Baltimore county. The Act contained minute directions as to the issuance of the bonds.

It provided that Bonds Nos. 1 to 300, inclusive, should be issued and dated July 1, 1912; bonds Nos. 301 to 600, inclusive, July 1, 1913; bonds Nos. 601 to 900, inclusive, July 1, 1914; bonds Nos. 901 to 1200, inclusive, July 1, 1915; and bonds Nos. 1201 to 1500, inclusive, July 1, 1916. Each issue was to be for three hundred thousand dollars, and the bonds were to bear interest at 4½ per cent. per annum. The bonds were to be so issued that one hundred thereof,— representing one hundred thousand dollars of the bonded debt,—should become due and payable in each year.

When the bonds were properly prepared and executed, the County Commissioners were directed to advertise the same for sale, and invite sealed proposals for their purchase. The

money arising from the sale of the bonds was directed to be kept as a separate fund by the Treasurer of Baltimore County, and to be deposited in such bank or banking institution as should be designated in writing by "The Good Roads Commission of Baltimore County," a body created by the Act, and all taxes levied and collected for the payment of interest and principal of the bonds were likewise to be kept in a separate fund by the treasurer.

The County Commissioners were directed to levy annually upon the assessable property of Baltimore county a tax sufficient to pay the interest on the bonds, and were further directed to levy a tax sufficient to pay the principal of said bonds as they should respectively mature and fall due.

For the purpose of meeting the preliminary expenses of the Good Roads Commission, the County Commissioners were directed, immediately upon the passage of the Act, to borrow the sum of one hundred thousand dollars, which sum was to be turned over to the County Treasurer, and placed by him to the credit of the Good Roads Commission. It was provided that the sum so borrowed should be paid out of the proceeds of the first sale of bonds.

Baltimore county is divided into fifteen election districts, and by section 3 of the Act it was provided that the Good Roads Commission, which was charged with the duty of the road construction, etc., provided for in the Act "*shall expend out of the funds raised by the sale of the bonds,* hereinafter provided for in this Act, *the sum of one hundred thousand dollars* ($100,000.00) for erecting, constructing and improving roads and bridges *in each election district of Baltimore county.*"

Charles L. Mattfeldt and William F. Coghlan, two members of the Board of County Commissioners of Baltimore County, against the protest and without the consent of Henry P. Mann, the only other member of the board, acting in pursuance of the directions of said Act, advertised in two weekly newspapers published in Baltimore county inviting proposals for the first issue of bonds directed to be issued by

the Act to the amount of three hundred thousand dollars, and declared their intention to issue and sell the said bonds as soon as they could find a purchaser therefor, and they were further incurring expenses, to be paid out of the public funds of Baltimore county, in and about the preparation and advertising of said bonds.

On the fifth day of September, 1912, the appellants, who are taxpayers and residents of Baltimore county, filed their bill of complaint, which is strictly a taxpayers' bill, against Charles L. Mattfeldt, Henry P. Mann and William F. Coghlan, the County Commissioners of Baltimore County, in which they assail the constitutionality of the Act of 1912, and prayed that a preliminary and perpetual injunction be issued restraining the defendants from doing any act or thing under the provisions of the said Act, and from selling, issuing, advertising for sale or in any manner offering for sale under the provisions of said Act any bond or bonds; and from pledging or attempting to pledge any of the assessable property of Baltimore county for the payment of the said bonds or any interest thereon; and from expending any money or funds of the taxpayers' of Baltimore county in the preparation, advertising, or sale of said bonds.

The defendants demurred to the whole bill and to each paragraph thereof, and assigned as the ground for demurrer, that the plaintiffs had not stated in their bill of complaint such a case as entitled them to any relief in equity. The Court, by its order of September 11th, 1912, sustained the demurrer and dismissed the bill, with costs to the defendants, and from this order the plaintiffs have prosecuted this appeal.

A moment's reflection will demonstrate how deeply concerned are the taxpayers of Baltimore county in the execution of the provisions of this Act. It inaugurates a gigantic system of road and bridge construction in that county. It provides that a vast sum of money shall be raised by public taxation for the completion of that system. The extent of this work and the method by which it is to be accomplished

is most unusual. Nothing of the kind has ever heretofore been attempted by any county in this State. The law in its general features, especially in those provisions which grant powers to the Good Roads Commission to appoint employees, assistants, workmen, buy machinery and to make contracts appears to have been modeled upon the Act which created the State Roads Commission. If this Act were carried into effect the taxpayers of the county would *certainly* be obliged to pay one million nine hundred and five thousand dollars;— one million five hundred thousand principal and four hundred and five thousand dollars interest on the bonds. If it be assumed that the taxable basis of the county were as much as one hundred and sixteen millions of dollars, it would mean an increase for practically the whole life of the bond issue, viz, fifteen years, of eleven cents annually in the tax rate. How much more in excess of this great sum the property owners would be obliged to pay, if this scheme of legislation is valid, no one can say. But that the work would entail great additional burdens and subject the county to obligations and expense in excess of the bond indebtedness is certain. This will appear when the provisions of the Act are examined.

If, therefore, the Act be invalid there can be no question as to the power and duty of a Court of Equity, at the suit of a taxpayer, to grant the relief prayed for in the bill, because the acts therein complained of would be *ultra vires* and greatly injurious to the plaintiffs as taxpayers.

The power of a Court of Equity, under such circumstances, to interfere at the suit of a taxpayer, and arrest the unauthorized acts of a municipal corporation has been settled in a long line of decisions of this Court. It was definitely settled in *Baltimore* v. *Gill,* 31 Md. 375, and the principles there announced have never been departed from in this State. The bill assails the validity of the Act upon ten distinct grounds. In the view we have taken of the Act only one of these grounds need be considered.

Whether or not the Act is unconstitutional depends of course upon its provisions, which we shall presently examine.

Before doing so, however, we shall state some general principles which the Court must observe and be guided by in passing upon the constitutionality of an Act of the General Assembly.

*First.*—Every presumption favors the validity of the statute; it cannot be stricken down as void unless it plainly contravenes some provision of the Constitution; a reasonable doubt as to its constitutionality is sufficient to sustain it, and the party assailing the Act must point out the special provision of the Constitution to which it is obnoxious. "Plenary power in the Legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception." *People* v. *Draper,* 15 N. Y. 543; *Lewis' App.* 67 Pa. St. 153. The general rule upon this subject is, that, except where the State or Federal Constitution has imposed limits upon the legislative power, it must be considered as practically unlimited; but this broad power appears to be subject in this State to some qualifications. *Regents, etc.,* v. *Williams,* 9 G. & J. 408; *Baltimore* v. *State,* 15 Md. 469. 469.

*Second.*—The Constitution apportions the powers of government; but does not make any one of the three departments subordinate to the other, when exercising the trust committed to it. The Court may declare legislative enactments unconstitutional and void in some cases; but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it. *Cooley on Con. Lim.,* 3 ed., 175; or, as said by CHIEF JUSTICE MARSHALL in *Marbury* v. *Madison,* 1 Cranch, 49: "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases must of necessity expound and interpret that rule. If two laws conflict with each other, the Courts must decide on the opposition of each.

So, if a law be in opposition to the Constitution; if both the law and the Constitution apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the Constitution; or conformably to the Constitution, disregarding the law, the Court must determine which of these conflicting rules governs the case. This is the very essence of judicial duty.

If, then, the Courts are to regard the Constitution, and the Constitution is superior to any ordinary Act of the Legislature, the Constitution, and not such ordinary Act, must govern the case to which they both apply.

Those, then, who controvert the principle that the Constitution is to be considered in Court as the paramount law, are reduced to the necessity of maintaining the Court must close their eyes on the Constitution, and see only the law.

This doctrine would subvert the very foundation of all written Constitutions. It would declare that an Act, which according to the principles and theory of our government is entirely void, is yet in practice completely obligatory. It would declare, that, if the Legislature shall do what is expressly forbidden, such act, not withstanding the expressed prohibition, is in reality effectual. It would be giving to the Legislature a practical and real omnipotence, with the same breadth which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure."

*Third.*—The Court will not declare an Act unconstitutional, because it is unwise or inexpedient, nor will it strike it down, because it will operate harshly upon persons affected by it. These are matters committed to the judgment of the law making power. They are purely political, and are not reviewable by the Court.

*Fourth.*—Section 29, Article 3 of the Constitution is mandatory; but the general disposition of the Court has been to give the section a liberal construction, so as not to interfere with or impede legislative action. The purposes of this provision of the Constitution are "to prevent the Legislature

from the enactment of laws surreptitiously; to prevent 'Log rolling' legislation; to give the people general notice of the character of the proposed legislation; so they may not be misled; to give all interested an opportunity to appear before committees of the Legislature and to be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation, and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation, and against false and deceptive titles. These purposes have been so plainly announced in numerous opinions by this Court that a statement of the rule and the citation of cases would seem to be sufficient." *State* v. *McKinney,* 29 Montana, 375; *Davis* v. *State,* 7 Md. 160; *Drennen* v. *Banks,* 80 Md. 310; *Baltimore* v. *Reitz,* 50 Md. 574; *County Commissioners* v. *School Commissioners of Worcester County,* 113 Md. 305.

*Fifth.*—The title, whilst it must indicate the subject, need not give an abstract of the Act; nor need it mention the means and methods by which the general purpose is to be accomplished. *Catholic Cathedral* v. *Manning,* 72 Md. 116; *Scharf* v. *Tasker,* 73 Md. 378; *Drennen* v. *Banks,* 80 Md. 310; *Whitman* v. *State,* 80 Md. 410.

But "though the title need not contain an abstract of the bill, nor give in detail the provisions of the Act, *it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the Act is made to compass."* *Luman* v. *Hitchens Bros.,* 90 Md. 14; and it must not be such as to divert attention from the matters contained in the body of the Act. *State* v. *Schultz,* 83 Md. 58. While this section of the Constitution has received a liberal construction, the Court has not hesitated to declare many Acts invalid which were clear infractions of its purpose. *Kafka* v. *Wilkinson,* 99 Md. 238.

*Sixth.*—"A statute may be good in part, while other parts are invalid. If a portion be unconstitutional, the Court is not authorized, for that reason, to declare the whole void." *State* v. *Davis,* 7 Md. 151. In *Commonweath* v. *Hitchings,*

5 Gray, 482, where the same rule of construction was adopted, the Court said: "The constitutional and unconstitutional provisions may even be contained in the same sections, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is, not whether they are contained in the same section, for the distribution into sections is purely artifical; but *whether they are essentially and inseparably connected in substance."* *Hagerstown* v. *Dechert,* 32 Md. 369. The Act will now be examined in the light of these principles.

Article 29, section 3 of the Constitution declares that: "Every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

The title of this Act is: "An Act to provide for a commission composed of James Rittenhouse, George W. Yellott and Asa B. Gardiner, Jr., to be known as 'The Good Roads Commission of Baltimore County,' with full powers to construct and improve a system of improved public roads, highways and bridges in Baltimore county, Maryland; and providing also the ways and means for the construction and improvement thereof by a bond issue of one million five hundred thousand dollars to be a lien upon the assessable property in said county; and repealing Chapter 744 of the Acts of the General Assembly of Maryland passed at the Session of 1910" (p. 575).

The construction and improvement of a system of improved public roads, highways and bridges in Baltimore county is the subject of this Act, which its title in express and explicit terms declares should be accomplished by means of the bond issue provided for and described therein.

Any one reading the title of this Act would naturally conclude that the "ways and means" by which the road and bridge construction contemplated by it should be paid for would be derived from the proceeds realized from the issue of the bonds. He would so conclude, because the title so states. No one reading the title of this Act would for a moment suppose that the county would be subjected to large

obligations and expense in excess of one million five hundred thousand dollars for the completion of the work provided for. The title by fair and reasonable interpretation limits and restricts the cost of the proposed road and bridge work to the amount of the bond issue, or to the sum realized from the sale of the bonds. The public was notified that the sum so realized was the "ways and means" which the Act provided, "for the construction and improvement" of the system of improved public roads, highways and bridges in the county.

Turning now to an examination of some of the provisions of the Act we find that section 1 created the "Good Roads Commission of Baltimore County," and declared that James Rittenhouse, George W. Yellott and Asa B. Gardiner, Jr., and their successors appointed in event of a vacancy on said Commission as provided in the Act should constitute said Commission. It provided for the qualification and organization of the Commission, and authorized it to elect a secretary, not a member of the Commission, at a salary not exceeding eighteen hundred dollars per annum and defined his duties, and provided that each member of the Commission should receive as compensation for his services a salary of two thousand dollars per annum.

"Said Commission shall annually issue a bulletin in printed form for general distribution showing in detail an approximate statement of the work completed and the work under contract and not completed in each election district of Baltimore County and the cost thereof, together with such other items of interest in connection with its work under this Act as may be deemed of interest to the public. On or before May 1st in each year said Commission shall cause to have been made by a certified accountant an audit of its receipts and disbursements, which audit shall be published in full in the bulletin aforesaid, and a synopsis of which, likewise to be prepared by the said accountant, shall be published in such of the county papers published in Baltimore County as may be designated

by said Commission.  All maps, plans and statistics
made, collected and compiled under the direction of
said Commission shall be preserved in its office in such
manner as may be readily accessible at all times.  All
such books, records, accounts and other data of said
Commission shall be public records, and shall be open
at all times to inspection by any taxpayer of Balti-
more County.  Such Commission shall also have au-
thority to employ such bookkeepers, clerks, stenogra-
phers and other assistants for office duties as may from
time to time actually be required for the proper per-
formance of the duties in this Act prescribed.  *The
salaries of the members of said Commission, its coun-
sel, its secretary and other office assistants, together
with all its office expenses, shall be paid by the County
Commissioners out of the general road and bridge fund
of the County."*

Section 3, as we have seen, made it mandatory upon the
Commission to expend out of the funds derived from the sale
of the bonds, one hundred thousand dollars in each of the
election districts of the county and conferred upon it the
broadest powers.  It granted to it the power

"to adopt and employ such means, method or system
of road construction, improvement and development
as may, in its judgment, be best calculated to promote
the objects of this Act; condemn, lay out, open, estab-
lish, construct, extend, widen, straighten, grade and
improve, in any manner, any road embraced in the
system adopted by it as aforesaid, and establish and
fix the width thereof; cause to be prepared such sur-
veys, plans, drawings and maps as it may deem proper
in the course of its work; acquire for Baltimore
County by agreement, gift, grant, purchase or condem-
nation proceedings as prescribed by section 251 to
256, inclusive, or by section 360 to 366, inclusive, of
Article 23 of the Code of 1904 of the Public General
Law, any private road or roads whatsoever, or private

property or rights of drainage for public use, whether belonging to private individuals or to turnpike companies or other corporations, and including any avenue, roads, lanes or thoroughfares, rights or interests, franchises, privileges or easements, that may be, in its judgment, desirable or necessary to complete said system of roads or to carry on the purposes of this Act; contract with any person or persons, company or corporation, either private or quasi public, or municipal, in furtherance of the duties or objects of this Act or any of the same; *employ all necessary attorneys, consultants, agents, laborers, help and assistants, skilled and unskilled, technical and professional, for the promotion of any of the work with which it is charged hereunder; make and enter into any and all contracts, agreements or stipulations germane to the scope of its duties and powers under this Act, and purchase all machines, machinery, tools, implements, appliances, supplies, materials, and working agencies whatsoever,"* &c. * * *

It is then provided that the Commission, when about to construct or improve any highway, should give the Highways Commission of Baltimore County a certified copy of the plans and specifications therefor, and a notice that said Commission is about to enter upon and proceed to the work.

"Such Commission shall thereupon advertise for at least two weeks in one or more newspapers published in said county, and for three consecutive issues in at least one daily newspaper published in Baltimore City, for sealed proposals for the construction or other improvement of said highway, accurately describing the same and stating the time and place for opening said proposals, and reserving the rights to reject any and all proposals; said proposals shall be publicly opened at the time specified in said advertisement, and the contract for such work or for the supplies and materials required for such construction or work or for the

supplies and machinery required for such construction
or improvement shall be awarded by the Commission
to the *lowest responsible bidder, unless in the opinion
of said Commission, the interest of the county shall be
better served by awarding the contract to some other
bidder, when this may be done; but said Commission
shall not be required so to advertise for proposals, or
to award any contract for any work or for any mate-
rials or supplies for any amount less than two thou-
sand five hundred dollars in the aggregate."* * * *
"Said Commission may sue and be sued in all matters
pertaining to the highways and bridges over which
they are given control by the provisions of this Act.
*For any negligence or breach of the duties imposed by
this Act, or for the breach on its part of any contract
entered into by it, the Good Roads Commission of
Baltimore County shall be liable in damages,* at the
suit of the person or persons injured thereby, but it
shall be subject to no greater liabilities in the prem-
ises than that now imposed by law upon the High-
ways Commission of Baltimore County; *and any final
decree or judgment obtained against said Good Roads
Commission of Baltimore County,* in any suit or ac-
tion, and all costs adjudged against it, *shall be satis-
fied and paid in due course, by the County Commis-
sioners of Baltimore County, out of such funds as are
used to satisfy claims against the said County Com-
missioners."

The mere statement of these provisions demonstrates, that
the title of the Act, as framed, diverted public attention from
a great and indefinite liability, in excess of one million five
hundred thousand dollars, imposed upon the taxpayers of
the county. It is a glaringly false, deceptive and mislead-
ing title. The provisions we have referred to occur in differ-
ent parts and sections of the Act and are intimately and
inseparably connected with its main purpose. They consti-
tute an essential portion of the very substance of the whole ·

scheme of the Act. Their separation from other provisions would result in the mutilation and emasculation of the Act in essential and important particulars. Many Acts have been stricken down because of titles not more deceptive, misleading or restrictive than the one under consideration. *Steifel* v. *Md. Institute for the Blind,* 61 Md. 144; *Luman* v. *Hitchens Bros.,* 90 Md. 15; *Whitman* v. *State,* 80 Md. 410; *Kafka* v. *Wilkinson,* 99 Md. 238; *Somerset County* v. *Pocomoke Bridge Company,* 109 Md. 1; *Nutwell* v. *Anne Arundel County,* 110 Md. 667; *Christmas* v. *Warfield,* 105 Md. 530; *Curtis* v. *Mactier,* 115 Md. 386.

Good roads are desirable, and the taxpayers would no doubt submit to any reasonable increase in taxation to secure them; but no such extensive and costly scheme of public improvement as that provided for by this Act should be imposed upon them under a title so misleading and deceptive.

For the reasons stated, we decide that Chapter 345 of the Acts of 1912 is unconstitutional and void. It therefore follows that the order appealed from must be reversed, and the cause remanded with directions to the lower Court to issue the injunction prayed for.

> *Order reversed and cause remanded, with costs to the appellants above and below.*