WILLIAM A. DUVALL, ET AL. *v.* JOHN R. HESS, ET AL.

[No. 86, October Term, 1948.]

*Decided March 18, 1947.*

146

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Nicholas Orem, Jr.*, with whom were *Duckett, Gill & Anderson, T. Howard Duckett* and *Vance V. Vaughn* on the brief, for the appellants.

*J. F. Lillard*, with whom was *Frank M. Hall* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

By Chapter 1051 of the Acts of 1945 the Legislature incorporated the "Town of College Park." Section 2 of the Act describes the area of the proposed town by metes and bounds. Section 3 divides the area into four districts which are specifically defined in that section. The first district is called "Calvert Hills District"; the second, "College Park District"; the third, "Lakeland District"; and the fourth, "Berwyn District." At the end of the second section of the Act it is provided:

"In addition to the above area the following area shall be included in the corporate limits of the Town of College Park, and shall constitute the Fifth District, and one (1) District Councilman shall be elected from said District in accordance with the qualifications and conditions for election of Councilmen herein provided:" The area of the Fifth District immediately follows.

Section 4 sets up the form of government for the "Town of College Park"—that it shall have a Mayor, Treasurer, a Councilman from each ditrict, and two Councilmen at Large, and provides for the election of these officials. This section contains provisions usually found in char-

ters of this character. The Act contained a referendum, and the people, at an election held under the Act, voted to adopt the charter. A government under the charter was organized and proceeded to function.

Thereafter the appellees in this case filed in the Circuit Court for Prince George's County, in Equity, a bill of complaint against the appellants, who are the officials of the "Town of College Park" created by the aforesaid Act. All of the appellees are residents of the Fifth District and their bill is for an injunction to restrain the appellants from exercising any of the powers contained in the Act and from levying under it taxes on their properties situate in the Fifth District. The reason advanced for this relief is that the title to the aforesaid Act is misleading and in violation of Article 3, Section 29 of the Constitution of the State, which is, in part, as follows:

"* * * every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

There are other allegations in the bill which we need not refer to.

The answer of appellants denied this contention and the material allegations of the bill, and makes the affirmative averment:

"that the properties allegedly owned by plaintiffs in what is now the Fifth District of the Town of College Park form part of a large area with indefinite boundaries frequently and generally known, referred to, and described as the town of 'Berwyn' in Prince George's County, Maryland, within the meaning and intent of the word 'described' as used in Article 3, Section 29 of the Constitution of the State of Maryland."

The answer also avers that properties allegedly owned by appellees were included within the limits of the town of Berwyn which the General Assembly attempted to incorporate by Chapter 678, Acts of 1941, and which had substantially the same boundaries as the Fourth and Fifth Districts of the present "Town of College Park."

It also averred that prior to the passage of Chapter 1051, Acts of 1945, much publicity by newspapers, handbills, public hearings and other means was given to the contemplated incorporation of the Fifth District in the proposed "Town of College Park."

Testimony was taken before the chancellor to determine what area was embraced by the phrase "the adjacent town of 'Berwyn' in Prince George's County, Maryland." After argument the chancellor filed a full and careful opinion, in which he held that the title to Chapter 1051 of the Acts of 1945 was misleading and in violation of the constitutional provision referred to. He declared the Act unconstitutional and granted the relief prayed for by appellees. From this decree the case comes here on appeal.

That part of the title to the Act in question with which we are concerned is as follows:

"An Act to incorporate the town of 'College Park' and the adjacent communities of 'Calvert Hills,' 'Lakeland' and the adjacent town of 'Berwyn' in Prince George's County, Maryland, as a municipal corporation to be known as 'Town of College Park,' and to define its boundaries."

What is meant by the "town of 'Berwyn' " in the title is important to the decision of this case. That there is an unincorporated place called "Berwyn" is without question. What area "Berwyn," prior to the Act, embraced is a matter upon which the parties to the case differ. Appellees contend that the Fifth District cannot be considered within the town of "Berwyn," while the appellants affirm that that District falls within the meaning of the appellation "town of 'Berwyn'."

Testimony was taken to show what the people living in the Fifth District and territory adjacent thereto considered the area embraced within the meaning of "town of 'Berwyn'." Most of these witnesses lived for years in what they thought was the town of Berwyn. Some had their places of business there and carried on their business with the people living in that community. The

testimony in this case may be said to establish the following facts: Many years ago there was a little place called "Branchville" in the area in question. The territory adjacent thereto, at that time, was probably open country. If there were any houses at all in this open country they were very few. There was a station maintained by the Baltimore & Ohio Railroad at Branchville. This little place, containing about fifty houses, has a post office, with no delivery, and its residents call at the post office for their mail. There is a small amount of business carried on at that place now. This town did not grow. The territory around it, comprising District Five, was from time to time developed, and at the present time there are twenty-five or more real estate developments in this area. Berwyn was one of the developments within the area to be incorporated in the "Town of College Park." Calvert Hills, Lakeland, and College Park were also included within that area. These developments grew, and the result was that Branchville was encircled. The Baltimore & Ohio Railroad abandoned its station at Branchville in 1908, and its station for the area in question is now located at Berwyn.

The Fifth District is bounded on the east by the tracks of the Baltimore & Ohio Railroad, and on the west generally by a stream known as "Paint Branch." The main part of what is known as Berwyn lies between the Baltimore-Washington Boulevard on the west and the Baltimore & Ohio Railroad tracks on the east. All of the real estate developments in District Five are located east of the boulevard, with the exception of "Autoville" and "Cherry Hill," sub-divisions. The business section developed on the boulevard, and as the population grew it gradually extended to the development known as "Hollywood," which is located in the northern section of the Fifth District. These sub-divisions were built up to such an extent that the area of the Fifth District presented the appearance of one entire community.

Residents ordering goods from Baltimore or Washington directed that delivery be made to their street ad-

dress in "Berwyn." In some instances they would give their addresses as a certain number in "Hollywood, Berwyn." The school which children in this district attended was called "Berwyn." Merchants advertised their places of business as located in "Berwyn." Until a year ago the telephone exchange that served this area was called "Berwyn." One of the appellants stated that she lived in the sub-division called "Autoville" and that this section has been known as "Autoville" since 1923. She owns and operates a tavern called "Knotty Pine Tavern," which is located on the boulevard in the "Autoville" sub-division. Her address, before the name of the exchange of the telephone was changed, was given by her as "Berwyn," Maryland. She receives her mail through the "Berwyn" post office, and she tells merchants to deliver goods to her at 9078 Baltimore Boulevard, Post Office "Berwyn," Maryland, and most of her deliveries by truck are marked "Berwyn." In going to her home on the Greyhound bus she buys a ticket to "Berwyn."

The operators of a night club called "Club Rayburn," formerly known as "Dude Ranch," located in the northern part of the "Autoville" sub-division, advertised in the Washington newspapers for the purpose of inducing patrons to come to their place of business. This enterprise, in August, 1946, advertised in the Washington Post its location: "Located six miles from Washington, on the Washington-Baltimore Boulevard, Berwyn, Maryland."

A real estate broker advertised houses and lots for sale in some of these sub-divisions as being located in "Berwyn." Stress was made by appellee that these real estate sub-divisions which were started from time to time were given their respective names which appeared on plats recorded among the Land Records of the County. It is contended that they are different places and each place has a different name. That being so, they could not be included within what is known as "Berwyn." The names shown on recorded plats of these sub-divisions have become lost to the memory, if ever known, of most of the people residing in the Berwyn area.

One of the witnesses did not know that there was such a place called "Autoville," although he had lived in "Berwyn" for years. It appears that the post office at Berwyn only delivers mail within a restricted area, and beyond this area is rural free delivery. It is said that the area of Berwyn should be restricted to the area within which mail is delivered, and hence could not include the Fifth District. We do not think this contention can be adopted as controlling what the people thought Berwyn embraced in area.

Without further commenting upon the evidence (and excluding the proffered testimony of appellant rejected by the chancellor), we are clearly of the opinion that the appellees failed to prove that these sub-divisions were regarded as separate communities, but on the contrary a heavy preponderance of the evidence shows that the entire area covered by the Fifth District was known and regarded generally by the people living therein as the "town of 'Berwyn'." The old place of Branchville, by the development of these sub-divisions, has been absorbed by the town of Berwyn, and the whole community of which these sub-divisions constitute a part, is now generally known and called "Berwyn."

We shall not again explore the purpose that the framers of the Constitution had in mind to be accomplished when they adopted as a part of that instrument the 29th section of Article 3. In the case of *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413, the late Judge Burke fully discussed this section, and in the very late case of *Neuenschwander v. Washington Suburban Sanitary Commission,* 187 Md. 67, 48 A. 2d 593, Judge Delaplaine again thoroughly reviewed the subject. In these two cases former opinions of this Court were quoted and cited. It would serve no purpose for us to comment on this section, which was so fully and ably treated in those two opinions.

In *Prince George's County Com'rs v. Com'rs of Laurel,* 51 Md. 457, the title under attack was: "An Act to in-

corporate the Town of Laurel in Prince George's County."
Laws 1870, c. 260. This Act was held good.

In *Johnson v. Luers,* 129 Md. 521, 523, 99 A. 710, the
title to the Act was: "An Act for the incorporation of the
town of Bowie, in Prince George's County, and for the
submission of this charter to the qualified voters of said
town for their adoption or rejection, and for the repeal
of all acts or parts of acts inconsistent therewith." This
title apparently was not questioned.

If the title to the present Act had been: "An Act to in-
corporate 'College Park' in Prince George's County," it
would have complied with the constitutional provision
as to titles. In the present case the title clearly indicates
that the adjacent communities of "College Park," "Cal-
vert Hills," "Lakeland" and "the adjacent town of 'Ber-
wyn'" were to be incorporated in and known as
"Town of College Park," and its boundaries defined.
This title gave notice to the members of the Legislature
and to the residents of the communities specified therein,
and to the residents of "the adjacent town of 'Berwyn'."
District Five was known and considered by its residents
as a part of the town of Berwyn. It is clear, therefore,
that the people residing in the adjacent communities
of "College Park," "Calvert Hills," "Lakeland" and the
"adjacent town of 'Berwyn'" were notified by the title
that the Legislature was considering the Act for the pur-
pose of incorporating these communities and towns into
a municipal corporation to be known as "Town of Col-
lege Park," and to define the boundaries thereof. When
it is considered that all of the sub-divisions in the terri-
tory of District Five have been built upon and that the
building in one sub-division has met up with the build-
ing in another sub-division, and the whole consolidated
with what is known and considered as "the town of
'Berwyn'," it is clear that the people residing in the Fifth
District were given, by the title to the Act, full notice
that this territory might be included within the limits
of the new "Town of College Park." This was all that
was required by Article 3, Section 29 of the Constitution.

It was argued because Section 3 of the Act in question provided that the town was to be divided into four districts and that none of these four districts included District Five, that this renders the title of the Act defective. But the title points to the body of the Act for the boundaries of the town, and the boundaries of the "Town of College Park" set out in Section 2 of the Act include the Fifth District. A person interested in the boundaries of the town, upon reading the title to the Act, would be directed to the body of the Act to find out definitely what the boundaries of the proposed town embraced. This was all the notice that was required, and it cannot be said that the title to this Act was misleading. It is true that the boundaries of District Five did not follow after the boundaries of District Four, but because the boundaries of District Five did not follow immediately after District Four would not render the title to the Act bad. See *McGlaughlin v. Warfield,* 180 Md. 75, 23 A. 2d 12.

Holding, as we do, that the title to this Act conforms to the constitutional provision, it will not be necessary for us to comment upon the ruling of the chancellor excluding certain evidence offered by the appellants.

*Decree reversed, bill of complaint dismissed, with costs to appellants.*