## COUNTY COMMISSIONERS OF SOMERSET COUNTY vs. POCOMOKE BRIDGE COMPANY.

*Constitutional Law—Title of Statute—Acquiescence in Unconstitutional Law—Invalidity of One Part of a Statute Rendering Invalid Another Part.*

The title of the Act of 1865, Chap. 14, is "An Act to incorporate the Pocomoke Bridge Company." The statute empowered the company to build a bridge across the Pocomoke River in Worcester and Somerset Counties. Section 12 of the Act required the County Commissioners of Somerset County to pay annually to the Bridge Company the sum of six hundred dollars, and the County Commissioners of Worcester to pay annually to it the sum of seven hundred dollars. *Held,* that this section is invalid because in conflict with Constitution, Art. 3, Sec. 29, which prescribes that the subject of every law shall be described in its title. No one could infer from the title of this Act that any such legislation as this was contemplated by it.

The fact that payments have been made by County Commissioners for a number of years in pursuance of a statute, does not operate to estop them from questioning its validity.

When one section of a statute is void because in conflict with a Constitutional provision, another section, which is so connected with that section that it would not have been enacted as an independent provision, is likewise invalid, but the remaining part of the statute which is not inseparably connected with those two sections will be upheld.

The Act of 1865, Chap. 14, incorporating the Pocomoke Bridge Company, between Somerset and Worcester Counties, provided in Section 11, that the residents of those two counties and all non-resident taxpayers of those counties should pass over said bridge free of toll, but that other persons using it should pay

certain rates. Sec. 12 provided that the County Commissioners of those two counties should pay certain sums annually to the Bridge Company. *Held,* that since it is obvious that the exemption from the payment of tolls was given to the residents of those counties by section 11 in consideration of the payments directed to be made by section 12, the fact that section 12 is invalid, because in conflict with the Constitutional provision requiring the subject-matter of every law to be set forth in its title, also renders invalid section 11, because that section is inseparably connected with section 12; but the remaining part of the Act is valid.

*Decided November 12, 1908.*

Appeal from the Circuit Court for Somerset County (LLOYD, J.)

The cause was submitted to BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ., on briefs by:

*Miles & Stanford* and *H. Fillmore Lankford* for the appellant.

*Melvin & Handy* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is a suit by the Pocomoke Bridge Company, a corporation incorporated by Chapter 14 of the Acts of 1865, against the County Commissioners of Somerset County, to recover six hundred dollars, claimed to be due under Section 12 of that Act. A demurrer to the declaration was overruled by the Court below and the defendant then filed six pleas, in the first of which is set out the charter of the Company in full, and all of them allege either that the whole Act is unconstitutional and null and void, or that Section 12 is. Some of them assign reasons for so alleging, while others do not—the principal ground relied on being that the title to the Act is

not sufficient, particularly in so far as the provisions contained in Section 12 are concerned. A demurrer to the pleas was sustained and the general issue plea of not guilty was filed. The case was submitted to the Court, without the intervention of a jury, and resulted in a verdict for the plaintiff. During the trial an exception was taken to the admission of Section 12, on the ground that it is unconstitutional and void. This appeal was taken from the judgment on the above-mentioned verdict. We do not deem it necessary to pass on the demurrers and the exception separately, but will proceed at once to what we regard the important question in the case.

It involves Section 29 of Article 3 of the Constitution, or more properly speaking Section 28 of Article 3 of the Constitution of 1864, which was in force when the Act of 1865 was passed. The provision in question is however the same in both—"every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." The title of the Act is: "An Act to incorporate the Pocomoke Bridge Company." The Act names seven persons as commissioners to receive subscriptions to the capital stock, "to construct a bridge across the Pocomoke River, in Worcester and Somerset Counties, at or near the site of the present ferry, known as Steven's Ferry"—said stock being limited to $45,000, divided into shares of $100.00 each. As soon as one hundred shares were subscribed, the organization of the company was authorized and various provisions were made in the charter. The two important sections are as follows: "Section 11. And be it enacted, That upon the completion of said bridge, all citizens and residents of Somerset and Worcester Counties, and all non-resident taxpayers of said counties, shall pass over said bridge free of toll or charges, but all other persons shall pay such tolls and charges as the president and directors may determine, provided said tolls or charges shall not exceed the following rates: for each foot passenger, five cents; for each horse and rider, ten cents; for each carriage with one horse attached, twenty-five cents; for each carriage

4 SOMERSET CO. *vs.* POCOMOKE BRIDGE CO.

with two horses attached, fifty cents; for each wagon or cart with more than two horses or oxen attached, seventy-five cents.

"Section 12. And be it enacted, That the County Commissioners for Somerset County be and are hereby required to levy annually on the assessable property of said county the sum of six hundred dollars, and to pay the same to the president and directors of said company at the end of each year, and that the County Commissioners of Worcester County be and they are hereby required to levy annually on the assessable property of said county, the sum of seven hundred dollars, and to pay over the same to the president and directors of the company aforesaid at the end of each year."

No one can read the title to this Act without being impressed with the fact that it is exceedingly meagre, in order to justify such legislation as Section 12. The charter was granted before the General Laws provided for the incorporation of bridge companies. Since 1868 the corporation laws of this State have required companies, incorporated under the General Laws for the erection of bridges, to first obtain, in writing, the consent of the County Commissioners of the county in which the bridge is to be located, or if proposed to be erected over a stream dividing two counties to obtain the consent, in writing, of the County Commissioners of both counties, and the Commissioners are given large powers over them—including that of requiring the adjustment and revision of tolls, so as to yield not more than eight per centum net dividend. Although those provisions were not in force when this Company was chartered, there were other statutes which showed the policy of this State to be, to require great care on the part of the County Commissioners before incuring obligations in connection with the building of bridges. They were required by the Code of 1860 to advertise for sealed proposals for building or repairing a bridge, if the cost exceeded $200.00, to award a contract to the lowest competent bidder, to demand a bond of the contractor, and, upon petition praying for a bridge to be built or repaired over a stream

dividing two adjoining counties, the Commissioners of one county were directed to obtain the concurrence of those of the other; three Examiners were to be appointed by each, who were required to examine into the expediency of building or repairing the bridge, the place where, the plan, material and the relative portion of the cost of each county, to advertise for proposals, award the work to the lowest bidder, supervise the work, etc. An appeal was granted any citizen or citizens to the Circuit Court, if the County Commisisoners determined to build or repair any bridge, or unite with an adjoining county in building or repairing one between the two counties, etc. Those provisions are still in force, being Sections 19-38 of Art. 25 of Code of 1904.

Notwithstanding such precautions were to be taken when the County Commissioners proposed to build or repair a bridge, this Act *required* the County Commissioners of those two counties to pay to a private corporation six and seven hundred dollars, respectively, every year, although there is nothing more in the title than shown above. Was that lawfully done? Or to put the question in a more apt form: Is this constitutional provision of any value, if two counties can thus be *required* to pay annually six per centum on about one-half of the authorized capital of a private corporation, under an Act, the title to which does not make the remotest suggestion of such a provision being in the body of the Act? There have been so many decisions by this Court relating to this clause of the Constitution, that it would seem almost as if there was not room for further contention about it, but the difficulty is that the principles applicable to it must be applied to the particular facts and circumstances of each statute under consideration, and hence it is not easy to find a case exactly in point. What may be considered "one subject" in some classes of legislation may not be in others.

The "subject" of the law now under consideration, *as indicated by the title,* was the incorporation of the Pocomoke Bridge Company, while *the body of the Act* not only contained provisions which were germane and appropriate to that sub-

ject, but also this provision which required the two counties to pay the respective sums of money to the company, after it was organized and the bridge was built. If it be conceded that in a charter of a bridge company it would be germane and lawful to *authorize* a county to subscribe to its capital stock, or to authorize the company to agree with the county that on payment of a reasonable sum its citizens could use the bridge free of tolls—although not mentioned in the title—it does not follow that such a provision as that now attacked can be inserted in a charter of a private corporation, and thus *compel* a county, which is not a party to the charter, to levy and pay annually a fixed sum for the use of the bridge, without at least giving some notice of such legislation in the title. That brings us more nearly to the real question in the case—Is the subject of this Act *so described in the title* as to authorize the legislation embraced in Section 12, within the spirit and meaning of the constitutional provision? As a matter of fact, it cannot be said that the title would in the remotest degree suggest to either the County Commissioners, to any representative of Somerset County in the Legislature, or to any taxpayer of the County that the Act proposed to require the County to pay the corporation six hundred dollars, or any other sum of money, every year. If we assume that they were informed by the name that it was proposed to form a corporation to build a bridge over the Pocomoke River, there is not even anything in the title to show that the bridge was to be between Somerset and Worcester Counties, for that river extended into Worcester County for a considerable distance beyond the Somerset boundary.

In many of the cases in this Court the object of this constitutional provision has been stated, and in *Stiefel v. Maryland Institution, etc.,* 61 Md. 148, it was said of it: "Publicity and a knowledge of *the true effect and operation* of every bill brought before the Legislature are the great safeguards against ill-considered and improper legislation. The provision in question is one, among many others in the Constitution, designed to promote those objects." In *Kafka v. Wilkinson,* 99

Md. 241, it was said, and has been several times since re-
peated, that its purpose and object "have been declared to be
two-fold; the *first* is to prevent the combination in one Act of
several distinct and incongruous subjects; and the *second* is,
that the Legislature and the people of the State may be fairly
advised of the *real nature* of pending legislation." In one of
the latest cases (*Fout* v. *Frederick Co.*, 105 Md. 563) JUDGE
BURKE quoted from Cooley's Con. Lim. (3rd Ed.) 158, that
the purpose of this provision is: "*First,* to prevent *Hodge
Podge* 'log rolling' legislation; *second,* to prevent surprise or
fraud upon the Legislature by means of provisions in bills of
which the titles give no intimation, and which might there-
fore be overlooked and carelessly and unintentionally adopted;
and, *third,* to fairly apprise the people, through such publica-
tion of legislative proceedings as is usually made, of subjects
of legislation that are being considered, in order that they
may have opportunity of being heard thereon, by petition or
otherwise, if they shall so desire."

While courts should be very cautious in striking down Acts
of the Legislature, they must protect the public and the mem-
bers of the Legislature themselves from being imposed on by
the violation of constitutional provisions, intended to furnish
them protection. A title to an Act should not only fairly indi-
cate the general subject of the Act, but should be sufficiently
comprehensive in its scope to cover, to a reasonable extent, all
its provisions and must not be misleading by what it says or
omits to say. Applying these and the above principles to
Section 12 of this Act, we cannot hesitate to declare it in-
valid. If it was actually known by the authorities and people
of the two counties, before it was passed, this conclusion may
possibly work a hardship on the stockholders of the company,
to now strike it down, but as we are called upon to determine
the question we must do so regardless of the consequences,
however much we may regret that some injury may ensue to
innocent persons. The long acquiescence by the county, in
paying the amount for so many years, cannot estop the present
County Commissioners from raising the question, and thereby

make an unconstitutional law in effect constitutional.   They are public servants whose duty is to protect the public, and they have no right to pay out the money of the County unless authorized to do so.   It was said by Judge Pearce in *Arnsperger* v. *Crawford,* 101 Md. 258 : "It was urged in argument that this statute has been silently acquiesced in so long that it should not now be disturbed.   This argument was urged in *Sadler* v. *Langham, supra* (34 Ala. 332), but the Court replied, justly as we think, that it was never too late to re-establish constitutional rights, the observance of which has been silently neglected ; and we may add that it is the infringement of the constitutional rights of the few in minor matters which leads to the disregard of the rights of the body of the people in matters of graver import, and that no constitutional right can be so unimportant as to justify a court in failing to enforce it, when its aid is invoked for that purpose."   It is said in 26 *Am. & Eng. Ency. of Law,* 575, that "Long acquiescence in the constitutionality of an Act in respect of its title is entitled to much weight in determining the sufficiency of the title."   In doubtful cases that may be properly considered just as we may consider the circumstances under which a provision is adopted, the construction placed on it by the Legislature, the framers of the Constitution and the people, as we said in *Bonsal* v. *Yellott,* 100 Md. 481, but in this case we can have no doubt as to the unconstitutionality of this provision, and hence must declare it void.

There is, however, another branch of this case to be determined.   It is well settled that it is not necessary, or proper, to strike down an entire Act because one provision is void, "unless the provisions are so connected together in subject-matter, meaning or purpose, that it cannot be presumed the Legislature would have passed the one without the other."   26 *Am. & Eng. Ency. of Law,* 579.   That principle has been announced by this Court over and over again, and it has been applied to cases in which the valid and void provisions were in the same section of the Act.   *Mayor, etc., of Hagerstown* v. *Dechert,* 32 Md. 369; *Steenken* v. *State,* 88 Md. 708.   There can,

therefore, be no possible difficulty in the way of declaring
Section 12 unconstitutional and in upholding other sections,
unless it is so inseparably connected with the others, or some
of them, as to raise the presumption that the Legislature
would not have passed the one without the other.  It is ap-
parent that it would work a great hardship on the appellee to
strike out Section 12 and retain the part of Section 11 which
authorizes all citizens, residents and non-resident taxpayers
of the two counties to pass over the bridge free.  It is impos-
sible to read those two sections without reaching the conclu-
sion that the Legislature gave that right to the people and tax-
payers of the two counties by reason of the provisions in Sec-
tion 12, and that Section 12 was passed in consideration of
the provision in Section 11.  No other explanation can be
given for the passage of the provisions referred to in the two
sections, and the fact that Section 11 not only gave the citizens
and residents of the two counties, but also the non-resident
taxpayers, the right to use the bridge free, strengthens that
conclusion, for surely the Legislature would not have made
the exemption in favor of the non-resident taxpayers, had it
not imposed the burden on them of contributing, as taxpayers,
to the payments provided for in Section 12.  If the provision
in Section 11 had been inserted in Section 12 so as to read:
"And be it enacted, That in consideration of said company
passing all citizens, residents and non-residents taxpayers of
said counties over said bridge free of toll or charges, the
County Commissioners of Somerset County be and are hereby
required to levy annually on the assessable property," etc.—
using the language of what is now Section 12—there could
be no doubt that the exemption from payment of toll or
charges would have fallen with the rest of the section, and
as that is unquestionably the meaning of the two sections,
as they now stand, we are of opinion that the provision re-
ferred to in Section 11 must fall with Section 12.

The rest of the Act is applicable to the incorporation of
the Company—to what the title describes the Act to be—and
after a lapse of over forty years, during which time much

of the stock of the Company has doubtless changed hands, it would be manifest injustice to strike down the whole charter, but it would be equally unjust to strike down the section that was clearly intended to provide compensation for the privileges granted in the other section, and yet permit the latter to remain in force, so as to continue those privileges. This conclusion will permit the appellee to charge such toll as the president and directors may determine—not to exceed the rates named in the charter. As the charter is subject to amendment, those rates can be reasonably regulated by the Legislature, if deemed excessive or unreasonable.

Inasmuch as we have reached the conclusions already announced, it is not necessary to discuss the question whether the Legislature could validly make such provisions as are contained in Sections 11 and 12, although we do not understand it to be denied by the appellant that they were within the power of the Legislature. The question involved in this case is not the power to so legislate, but whether the power was validly and constitutionally exercised, and we therefore will not prolong this opinion by entering into a discussion of the power of the Legislature in such matters. Nor are we called upon to consider other questions raised or suggested.

It follows from what we have said that the judgment must be reversed and, as there can be no recovery, we will not award a new trial.

> *Judgment reversed without awarding a new trial, the appellee to pay the costs above and below.*