FREDERICK E. WEBER ET AL., MAYOR AND COMMON
COUNCIL OF MT. RAINIER,

*vs.*

JOHN E. PROBEY, ET AL.

*Taxation: illegal; injunction at suit of taxpayers. Statutes:
constitutionality of—; duty of courts; title of statute;
defective; section 29 of Article 3 of Constitution.
Mt. Rainier sewers: Chapter 250 of the
Acts of 1914; unconstitutional.*

Taxpayers of an incorporated town or city have the right
to proceed in equity to enjoin the municipal authorities from
making a contract or incurring obligations which they have no
lawful power to make or incur, and which, if made or incurred,
will increase the burden of taxation.                    p. 550

The courts will not declare an Act unconstitutional, because
it is unwise or inexpedient, nor will they strike it down, because
it will operate harshly upon persons affected by it. These are
matters committed to the judgment of the law-making power.
They are purely political, and are not reviewable by the courts.
p. 551

Courts will not declare void an Act of the Legislature, if by
any reasonable construction it can possibly be maintained.
p. 551

The purpose of section 29 of Article 3 of the Constitution, relating to the titles of statutes, is "to prevent 'logrolling' legislation; to give the people general notice of the character of the proposed legislation, so they may not be misled; to give all interested an apportunity to appear before committees of the Legislature and to be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation, and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation, and against false and deceptive titles."

p. 551

Under this section, although the title of a statute need not give the provisions of the statute in detail, nor even an abstract of them, it must not be misleading.					p. 552

Chapter 250 of the Acts of 1914, by its title authorizes the Mayor and Council of Mt. Rainier to levy taxes on the assessable property of the town, to redeem the bonds authorized for the construction of the sewer system, etc., provided for; while section 7 of the Act authorizes the assessment of the same upon abutting property owners, and the title of the Act being at variance with the provisions of the Act itself, is misleading, and the Act is unconstitutional and void.			pp. 552-553

And this provision of the Act is so connected with the purpose and scheme of the Act, that it is not to be presumed that the Legislature would have passed the Act without it, and the whole Act is void.						p. 553

*Decided April 8th, 1915.*

Appeal from the Circuit Court for Prince George's County. (In Equity.) (BEALL, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

R. Lee Van Horn and T. Howard Duckett (with whom was Marion Duckett on the brief), for the appellant.

F. Snowden Hill and James C. Rogers, for the appellee.

THOMAS, J., delivered the opinion of the Court.

The bill in this case was filed by John E. Probey and others as land owners and taxpayers of the town of Mount Rainier, in Prince George's County, in behalf of themselves and all other land owners and taxpayers of said town, against Frederick E. Weber and others, assuming to act as the Mayor and ·Common Council of Mount Rainier, to enjoin them from offering for sale or selling any bonds or exercising any of the powers conferred by Chapter 250 of the Acts of 1914, and from levying or collecting any tax on the real estate in the town for the payment of the principal of the bonds referred to in said Act or the interest thereon.

The Act, which is set out in the bill, declares in its title that it is "An Act to authorize and empower the Mayor and Common Council of the Town of Mount Rainier, a municipal corporation, in Prince George's County, to issue bonds and appropriate the proceeds arising from the sale thereof for establishing, constructing and maintaining a sewer and water system in said town of Mount Rainier; to submit the issue of said bonds to the qualified voters thereof for determination; to condemn such land as may be necessary for the building of said system, and to levy taxes on the assessable property of said town to redeem said bonds and to pay the interest thereon."

The first section authorizes and directs the Mayor and Common Council to issue coupon bonds to an amount not exceeding the sum of $100,000.00, to be designated "Mount Rainier Sewer and Water Bonds," for the purpose of establishing, constructing and maintaining a sewer and water system for the town, the bonds to be issued for sums not less than $500.00 or more than $1,000, and to bear interest

at a rate not exceeding six per cent per annum, payable semi-
annually. The second section provides that the bonds shall
be numbered consecutively and be redeemable "in their proper
order," as follows: Two thousand dollars thereof three years
after the date of issue, and two thousand dollars thereof
annually thereafter, and that they shall be sold at public
auction, "or by sealed bids," to the highest responsible bidder,
after "due advertisement," at not less than par.

Section three directs that the amount realized from the
sale of the bonds shall be applied solely to the construction
and maintenance of the sewer and water system, and that the
Mayor and Common Council "shall have the power and
authority to determine where and in what order, and under
what streets, roads and public highways of the town the
sewer mains and water mains shall be established, con-
structed or laid;" to determine the kind of system to be
constructed; to make all contracts for the same and to pass
all orders for the payment of the costs thereof and for land
purchased or condemned.

Section four provides how contracts for the construction
of the system may be awarded; section five authorizes the
Mayor and Common Council to purchase or condemn any
land, private water and sewer mains, wells or streams, etc.,
that they may deem necessary for the system, and section
six declares that the title to the system when completed shall
be vested in the town, and that the Mayor and Common
Council shall have the power to fix schedules of rates for
furnishing water and sewer facilities, and to pass all neces-
sary ordinances, "with penalties for their violation, for the
proper installation, security, protection and use of said sewer
and water system; and to make such extensions of said sewer
and water system, or either, as may from time to time appear
necessary to them." Section 7 is as follows: "That for the
purpose of paying said bonds and the coupons thereon, issued
under the provisions of this Act, the said Mayor and Com-
mon Council * * * shall have authority, and are hereby
authorized, empowered and directed so to do, to annually

assess equally against the total number of front feet of all real estate in said town abutting on sewer and water mains, and to levy thereon as a special sewer and water tax, an amount sufficient to pay the said bonds and the coupons thereon, as said bonds and coupons may severally mature as hereinbefore provided, the owner or owners of said abutting real estate being assessed in proportion to the number of assessable front feet owned by him, her or them; provided, that when corner property under one ownership fronts or abuts on two streets or public highways containing sewer and water mains, and which said property requires but one service, the abutting front feet shall be computed for the purpose of the assessment and levy thereunder as one-half of the total number of front feet bordering on both streets * * *. Said Mayor and Common Council shall have full power to collect the special sewer and water tax herein provided in the same manner as the regular town taxes in said town * * * are collected; and when said tax is collected it shall be applied as hereinbefore provided."

Section 8 provided for the appointment by the Mayor, with the consent of the Common Council, of a "Sewer and Water Commission," whose duties are to "be advisory solely," and section 9 requires the question of issuing the bonds referred to to be submitted to the qualified voters of the town at a special election to be held on the third Tuesday of April, 1914, and, in case it is not then approved, to be again submitted at a special election to be held on the third Tuesday in April, 1915, and declares that all persons qualified to vote at the regular town election to be held in May, 1914, shall be qualified to vote at the special election in April, 1914, and that all persons qualified to vote at the regular town election to be held in May, 1915, shall be qualified to vote at the special election in April, 1915.

The bill alleges that the plaintiffs own real estate in the town of Mount Rainier and are all residents thereof except James C. Rogers, and that they will be required to pay such taxes as may be levied by the Mayor and Common Council;

that the defendants, acting under the supposed authority of said Act, have advertised for sealed bids for the bonds therein mentioned to the amount of $100,000.00, and are incurring great expense in advertising and in the preparation of the bonds; that bids will be received by them on the 30th of June, 1914, and that they threaten to and will sell and issue the same as they find purchasers for them unless restrained by the Court.

The bill then alleges that Chapter 250 of the Acts of 1914, is unconstitutional and void because it violates sec. 29 of Art. 3 of the Constitution of the State; the Declaration of Rights (Art. 23), and the Fourteenth Amendment of the Constitution of the United States. It further alleges that the special election held on the third Tuesday of April, 1914, in pursuance of said Act was not and could not be lawfully held under the provisions of the charter of the town (Act of 1910, Chapter 514, p. 998), as amended by the Act of 1914, Chapter 357, because no provision is made in either the original charter or said amendment thereof for a "registration of the legal voters of the" town; that for the same reason the defendants were not lawfully elected and do not compose the Mayor and Common Council of Mount Rainier, and that the result of the special election was due to votes cast by many persons who were not entitled to register or to vote at said election.

A preliminary injunction was granted as prayed, and the defendants answered, admitting the facts and that they intended to carry out the provisions of Chap. 250 of the Acts of 1914, except the averment that there was illegal voting at the special election, which they deny. They further deny that the Act violates the Federal or State Constitution or the Declaration of Rights; that the special election was illegal or that the defendants were not lawfully elected. The case was submitted for a final decree on the bill and answer, and this appeal is from the decree of the Court below perpetually enjoining the defendants from selling, disposing of or hypo-

thecating any of the bonds provided for in the Act of 1914, and from incurring any expense chargeable to the town in connection with any effort to sell, dispose of or hypothecate said bonds, and requiring them to pay the costs of this suit.

There can be no doubt about the right of taxpayers of an incorporated town or city to proceed in equity to enjoin the municipal authorities from making a contract or incurring obligations which they have no lawful power to make or incur, and which, if made or incurred, will increase the burden of taxation. They constitute, says JUDGE ROBINSON in *Baltimore* v. *Keyser,* 72 Md. 106, "a special class, having a special interest in the subject-matter distinct from that of the general public." He cites the case of *St. Mary's Industrial School* v. *Brown,* 45 Md. 310, where "an injunction was held to be the proper remedy whenever it appears that municipal corporations or their officers are 'acting *ultra vires,* or assuming to exercise a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them, or where such unauthorized acts may affect injuriously the rights and property of the parties complaining.' " It is upon this principle that relief was granted in *Painter* v. *Mattfeldt,* 119 Md. 466.

As the plaintiffs are residents, taxpayers and owners of real estate in the town of Mount Rainier any obligation the town authorities may incur will necessarily affect them as taxpayers, and particularly is that so in this case, where, by the terms of the Act, the Mayor and Common Council are to determine in what streets, etc., the sewer and water mains are to be laid, and are required to impose the cost of the system upon the abutting owners, and where the improvements contemplated may therefore result in great additional burdens upon the defendants as owners of real estate within the corporate limits.

This brings us to the objection urged against Chapter 250 of the Acts of 1914, and in the view we take of the case it

will not be necessary to consider the other grounds upon which relief is prayed.

The plenary power of the Legislature; the presumptions in favor of the validity of statutes, and the principle upon which courts are required to pass upon their constitutionality are clearly stated in *Painter* v. *Mattfeldt, supra,* where, after referring to the duty of courts to give effect to constitutional requirements, JUDGE BURKE said: "The Court will not declare an Act unconstitutional, because it is unwise or inexpedient, nor will it strike it down, because it will operate harshly upon persons affected by it. These are matters committed to the judgment of the law-making power. They are purely political, and are not reviewable by the Court.

Section 29 of Article 3 of the Constitution, which declares that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title," is mandatory, and while, as said by CHIEF JUDGE ALVEY in *State* v. *Norris,* 70 Md. 91, "this Court has ever been reluctant to defeat the will of the Legislature by declaring * * * legislation void, if by any construction it could possibly be maintained," it is our plain duty to do so where there is a clear infraction of this wise and salutary provision of the organic law, the purposes of which, we have said, are "to prevent 'Logrolling' legislation; to give the people general notice of the character of the proposed legislation, so they may not be misled; to give all interested an opportunity to appear before committees of the Legislature and to be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation, and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation, and against false and deceptive titles." *Painter* v. *Mattfeldt, supra.*

In the case of *Luman* v. *Hitchens Bros. Co.,* 90 Md. 14, CHIEF JUDGE McSHERRY said: "There are two things prohibited in the body of the Act under a title indicating a pur-

pose to prohibit but one thing; and that one thing is a wholly different thing from the two which are prohibited. The *title* relates to sales to *employees;* the *body* of the Act prohibits railroad and mining corporations from selling at all; and it also, without qualification, prohibits the designated officers from having any interest in any store, and from selling to *any* person any goods, wares or merchandise in the county. * * * Though the title need not contain an abstract of the bill, nor give in detail the provisions of the Act, it must not be misleading." In the case of *State* v. *Schultz,* 83 Md. 58, the Court held that the title must not be such as to divert attention from matters contained in the body of the act, and in *Painter* v. *Mattfeldt, supra,* the Court in holding the title of the Act deceptive and misleading, said though JUDGE BURKE: "Any one reading the title of this Act would naturally conclude that the 'ways and means' by which the road and bridge construction contemplated by it should be paid for would be derived from the proceeds realized from the issue of the bonds. * * * No one reading the title of this Act would for a moment suppose that the county would be subjected to large obligations and expense in excess of the one million five hundred thousand dollars for the completion of the work provided for." Another instance of a misleading title is found in the recent case of *State* v. *King,* 124 Md. 491.

In the case we are now considering the title declares that it is an Act to authorize the Mayor and Common Council of Mount Rainier to issue bonds for the purpose of constructing a sewer and water system; to condemn the land necessary for that purpose, and to levy taxes on the assessable property of the town to redeem the bonds and pay the interest thereon, whereas in the body of the Act the Mayor and Common Council are authorized and required to collect from the owners of property abutting on the streets, etc., in which the sewer and water mains are laid the amount of the bonds and interest. The words "assessable property of the town" clearly mean all property in the town liable to be assessed for the purpose

of taxation, and any one reading the title or hearing it read
would naturally suppose that the cost of the proposed im-
provement was to be borne by all taxpayers of the town.
There is certainly no intimation in the title that the owners
of property abutting on the streets in which the mains are
located are to bear the entire burden. On the contrary, the
words employed in the title express an entirely different pur-
pose. The title of the Act is, therefore, not only deceptive
and misleading, but is at variance with the body of the Act,
and the Act is a plain violation of the constitutional pro-
vision referred to.

It was said by CHIEF JUDGE BOYD, in *Somerset County* v.
*Pocomoke Bridge Co.,* 109 Md. 1 : "It is well settled that it
is not necessary, or proper, to strike down an entire Act
because one provision is void, 'unless the provisions are so
connected together in subject-matter, meaning or purpose
that it cannot be presumed the Legislature would have passed
the one without the other." The provision of section 7 of
the Act of 1914 is so connected with the subject-matter, pur-
pose and scheme of the Act that it cannot be presumed that
the Legislature would have passed the Act without it. *Nut-
well* v. *Anne Arundel County,* 110 Md. 667.

Assuming that the special election in April, 1914, is free
from the objections *alleged in the bill,* as to which we express
no opinion, it is obvious that the approval of the bond issue
by the voters of the town cannot cure the defect in the Act
of 1914, Chapter 250, and as the special election was held in
pursuance of that Act it lacks the sanction of valid legis-
lation.

It follows from what we have said that the decree of the
Court below must be affirmed.

> *Decree affirmed, the costs to be paid by the
> appellants.*