# WILLIAM M. CULP *v.* COMMISSIONERS OF CHESTERTOWN.

[No. 20, January Term, 1928.]

*Decided April 4th, 1928.*

The cause was argued before PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John D. Urie* and *Charles F. Harley,* submitting on brief, for the appellants.

*Herbert E. Perkins,* with whom were *Harrison W. Vickers* and *S. Scott Beck,* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The proceedings in this case are designed to test the constitutionality of chapter 359 of the Acts of 1927. The general scope of this act is to provide for the construction of roadways, sewers, and sidewalks in Chestertown, Kent County, to issue bonds for the payment of these improvements, and liquidate an existing indebtedness of the town. The appellants, citizens and taxpayers of Chestertown, attacked the legality of this legislation on several grounds. In our view of the case, it is only necessary to consider three of these contentions, namely, first, that section 7 of the act declares it to be an emergency law necessary for the preservation of the public health and safety, when in fact and reality no emergency existed; second, that section 4 of article 76 of the Code requires that every public local law made to take effect before the first day

of June next after the session at which it may be passed shall immediately after its passage be published once in each of three successive weeks in such newspaper or newspapers of the respective counties in which it may operate as the county commissioners of each county may direct, which provision of the Code was not complied with in this case; and, third, that the act is unconstitutional in that it is violative of section 29 of article 3 of the Constitution, which requires "that every law enacted by the General Assembly shall embrace but one subject and that shall be described in its title." We will consider these objections to the legality of the legislation now before us in the order above stated.

Article 16 of the Constitution, known as the referendum article, exempts certain classes of legislation from the provisions of that article, and provides the mode of referring those classes of legislation embraced in the article to a vote of the people for adoption or rejection. It makes no provision for a referendum to the voters of any city of the state other than Baltimore City, or of any rural section of the state of a less extent than a county. In the cases of *Strange v. Levy,* 124 Md. 645, and *Richardson v. Blackstone,* 135 Md. 531, this court has definitely determined that article 16 of the Constitution does not apply to acts relating to towns and cities other than Baltimore City, and that such acts, although not emergency acts, can be made to take effect as of the date of their passage. As a result of these decisions it is clear that the act here under consideration does not come within the provisions of article 16 of the Constitution, and therefore that portion of section 7 of the act which declares it to be an emergency law and necessary for the preservation of the public health and safety is surplusage and should be rejected, leaving intact that portion of section 7 of the act which declares that the same shall take effect from the date of its passage. If legislation confined to the municipality of Chestertown did come under the provisions of article 16 of the Constitution, the act would take effect from the date of its passage because of the legislative declaration that it was an emergency law necessary for the preservation

of the public health and safety and passed by the necessary three-fifths vote of the membership of both houses of the General Assembly. But, as stated, this legislation is not within the purview of article 16 of the Constitution, and is governed by section 31 of article 3 of the Constitution, which provides: "No law passed by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it be otherwise expressly declared therein." The act here being controlled by section 31 of article 3, and expressly declaring in the act that it shall take effect from the date of its passage, every constitutional requirement to make it effective on and from that date has been complied with.

What we have said disposes of the first contention of the appellants, without regard to the contention made in their brief in respect to an act not being an emergency law simply because of the Legislature's declaration to that effect. We deem it advisable, however, to say in answer to that argument that, if the class of legislation enacted is not embraced in and covered by the provisions of article 16 of the Constitution, the Legislature has the undoubted right to fix the date of its taking effect, without declaring it an emergency law, and without the necessity of its passage by a vote of three-fifths of the membership of both houses; and if the legislation does come within the provisions of article 16 of the Constitution, in that event the question of whether or not an emergency in fact exists is a question for the Legislature, and its determination is final and not subject to review by the courts. This is made clear by the language of section 2 of article 16, which provides: "No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it contain a section declaring such law an emergency law and necessary for the immediate preservation of the public health or safety, and passed upon a yea and nay vote supported by three-fifths of all the members elected to each of the two houses of the General Assembly." The effect of this language is to declare that any act of the legislature, com-

prehended and coming within the provisions of article 16, which contains a section declaring such law to be an emergency law and necessary for the immediate preservation of the public health or safety, and passed upon a yea and nay vote supported by three-fifths of all the members elected to each of the two houses of the General Assembly, may be made to take effect at any time expressed in said act.

The second contention of the appellants is that this act is invalid for the reason that the provision of section 4 of article 76 of the Code requires that every public local law made to take effect before the first day of June next after the session at which it may be passed shall immediately after its passage be published once in each of three successive weeks in such newspaper or newspapers of the respective counties in which it may operate as the county commissioners of each county may direct. It is clear from a reading of this section that its provisions cannot be considered mandatory and a condition precedent to the act's taking effect. To interpret this section to be more than directory would postpone the effectiveness of any public local law for at least three weeks after its passage, and this no matter how great the emergency to meet which the act might have been passed. And, again, if compliance with its provisions should be held to be a condition precedent to the act's taking effect, the county commissioners of any county might, through inadvertence, negligence, refusal, or disagreement as to the papers in which it is to be published, postpone the date at which such legislation would take effect, thereby frustrating the legislative purpose. The Legislature adjourns in the early part of April, and as to those laws that become effective on June first following, the public have sufficient time to be informed as to how they will be affected by the new legislation, and it was for the purpose of giving this information by publication as soon as possible after the passage of legislation taking effect before the first of June that the section now under consideration was passed.

The third objection urged by the appellants, namely, that the act violates section 29 of article 3 of the Constitution, is

sound, and this renders the act fatally defective. This constitutional provision is that every law enacted by the General Assembly shall embrace but one subject and shall be described in its title. This language has probably been more productive of litigation than any other section of our State Constitution, much of which has reached this court and been the subject of numerous decisions. We do not propose to review any great number of these decisions, because they have little force as precedents except in so far as they settle principles of constitutional and statutory construction. These rules are succinctly laid down by this court, speaking through Judge Burke, in the case of *Painter v. Mattfeldt,* 119 Md. 463, with the authorities in this court and elsewhere supporting the principles therein stated. The authorities hold that section 29 of article 3 of the Constitution is mandatory, but that the general disposition of this court has been to give this section a liberal construction so as not to interfere with or impede legislative action; that the title of an act, whilst it must indicate the subject, need not give an abstract of the act, yet it must not be misleading by what it contains or what it omits. The purpose of this constitutional provision has been declared to be to prevent separate and incongruous subjects from being contained in one act, and thereby preventing "log-rolling" legislation; to give the people general notice of the character of the proposed legislation, so they may not be misled; to give all interested an opportunity to appear before the committees of the Legislature and be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation, and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation and against false and deceptive titles. *Stiefel v. Md. Institute for the Blind,* 61 Md. 144; *State v. Morris,* 70 Md. 91; *Whitman v. State,* 80 Md. 410; *Kafka v. Wilkinson,* 99 Md. 238; *Christmas v. Warfield,* 105 Md. 530; *Somerset County v. Pocomoke Bridge Co.,* 109 Md. 1; *Nutwell v. Anne Arundel County,* 110 Md. 667; *Curtis v. Mactier,* 115 Md. 383; *Painter v. Mattfeldt, supra; Weber v. Probey,* 125 Md. 544.

The enforcement of this constitutional provision in proper cases is a mandate upon the judiciary, and is essential to accomplish the purposes which this court has determined were intended by the framers of the Constitution.

The title of the act in question is: "An act to provide for the construction of curbs, gutters, roadways, sewers and sidewalks in Chestertown, Kent County, Maryland, and to liquidate a previous debt, and to issue bonds to pay for the same, and to levy an annual tax for the payment of such bonds and the interest thereon, and submitting same to the qualified voters of Chestertown for their approval or rejection." Section 1 of the act authorizes and empowers the commissioners of Chestertown to issue bonds in the name of the commissioners of Chestertown to an amount not exceeding $100,000, to be designated as "Chestertown curb, gutter, roadway, sidewalk, sewer and liquidation of debt bonds," and provides the denomination, rate of interest and due date. Section 2 provides for the advertisement and sale of the bonds. Section 3 provides that the commissioners of the town shall annually levy upon the assessable property sums of money necessary to pay the interest on and redeem the bonds as the same may mature from time to time. Section 4 provides how the proceeds of the bonds shall be applied to the improvement of certain designated streets, by construction of curbs, gutters and pavements, and the amount to be expended for each. In said section, under the sub-head "Pavement," after providing for the expenditure of $8,350 on certain designated streets, it provides: "One-half of $8,350 to be paid by town (adjoining property owners to pay one-half), $4,175." By section 5, R. Hynson Rogers, Thomas G. Wroth, James H. Sides and L. Bates Russell are created and constituted a special commission, with equal authority, to act and cooperate with the commissioners of Chestertown in the use and expenditure of the fund received from said bond issues, and the commissioners of Chestertown and the special commission, acting as one body, are authorized to fill any vacancy in this special commission. Section 6 provides for a submission to the qualified voters

of Chestertown at the next regular election for commissioners of Chestertown, for their adoption or rejection, of the question of said bond issue. Section 7, which we have already discussed, declared it to be an emergency law and that it should take effect from the date of its passage.

The title to this act is deceptive, in that it declares that the bonds provided for and the interest thereon should be paid by an annual levy on the assessable property of the municipality of Chestertown, whereas in the body of the act it is provided that a certain portion of the expense of the work provided for shall be paid by the adjoining property owners; that is to say, in respect to pavements, it provides that one-half of the whole amount of $8,350 so expended shall be paid out of the bond issues, which are to be redeemed by a general levy on all the property of the town, and the other half assessed against and paid by the adjoining property owners. It is apparent that one reading the title of this act would conclude that the whole cost of the improvements would be paid out of the bond issue, and that these bonds, including the interest thereon, would be paid and redeemed by money derived from a levy of an annual tax on all the property. There is no suggestion that a portion of the contemplated improvements was to be charged against the adjoining property owners. In this respect the case of *Weber v. Probey, supra,* only differs in degree. In that case the title to the act authorized and empowered the mayor and common council of the town of Mount Rainier to issue bonds and appropriate the proceeds arising from the sale thereof for establishing, constructing and maintaining a sewer and water system in the town, and to levy taxes on the assessable property of the town to redeem said bonds and pay the interest thereon. Section 7 of the act provided for assessing the whole cost of the improvement against the abutting property owners, with power to the mayor and common council to collect the assessment in the same manner as regular town taxes. In that situation this court, speaking through Judge Thomas, said: "In the case we are now considering the title declares that it is an act to

authorize the mayor and common council of Mount Rainier to issue bonds for the purpose of constructing a sewer and water system; to condemn the land necessary for that purpose, and to levy taxes on the assessable property of the town to redeem the bonds and pay the interest thereon, whereas in the body of the act the mayor and common council are authorized and required to collect from the owners of property abutting on the streets, etc., in which the sewer and water mains are laid, the amount of the bonds and interest. The words 'assessable property of the town' clearly mean all property in the town liable to be assessed for the purpose of taxation, and any one reading the title or hearing it read would naturally suppose that the cost of the proposed improvement was to be borne by all taxpayers of the town. There is certainly no intimation in the title that the owners of property abutting on the streets in which the mains are located are to bear the entire burden. On the contrary, the words employed in the title express an entirely different purpose. The title of the act is, therefore, not only deceptive and misleading, but is at variance with the body of the act, and the act is a plain violation of the constitutional provision referred to."

The title in that case was misleading because one reading it would be led to believe that the expense of the municipal improvement was to be secured by laying a tax on all of the assessable property of the town, whereas in fact it was to be derived from a front foot assessment against the property abutting upon the improvements. The title in this case is equally misleading, in that one reading it or having it read to him would naturally expect that the whole cost of the proposed improvement was to be defrayed out of the proceeds of the bonds, and that the bonds were to be redeemed and paid off by an annual levy of a tax upon the assessable property of Chestertown. The titles of these two acts are both deceptive; they differ only in degree.

The title in the present case is further misleading and deceptive in that it is silent in respect to the persons who are to administer the fund produced by the sale of the bonds, and

the natural supposition would be that the legally and duly elected commissioners of the municipality of Chestertown would have charge of the administration of this fund and the operations necessitated by the proposed improvements, whereas by section 5 in the body of the act there is created a special commission of four men, with equal authority to act and co-operate with the commissioners of Chestertown in the use and expenditure of the fund received from the bond issue, and the commissioners of Chestertown and the special commission, acting as one body, are authorized to fill any vacancy in the special commission. Certainly no one reading the title of this act would expect to find in the body of it the creation of a special commission of four, given equal authority and authorized to act with the three commissioners of the town. This section not only gives this special commission a voice and vote in the expenditure of the $100,000 proposed to be used, but gives them absolute control, even in opposition to the unanimous board of duly elected commissioners of the town. It might very well be that, if such a provision had appeared in the title of the act, indicating a determination to put the expenditure of this sum of money in the hands of persons named in the act, rather then those elected by the voters of the town, there would have been opposition sufficient to defeat its passage. We are not called upon to decide that such is the fact, but only to determine that, in the failure to set forth the creation of this special commission in the title of the act, it was so deceptive and misleading as to conflict with section 29 of article 3 of the Constitution. In *Christmas v. Warfield, supra,* this court struck down the act under consideration as being repugnant to section 29 of article 3, and stated: "The title describes certain duties which it is intended shall be imposed on the Board of Public Works. The title is restrictive in character, and points out three specific things which the Board of Public Works is authorized to do: First, to collect the insurance upon warehouses Nos. 1 and 2, and place the same to the credit of the tobacco warehouse fund; second, to rebuild a modern warehouse on the present site of warehouses Nos. 1 and 2 and the property owned by

the state adjacent thereto; or thirdly, to sell said property, or lease the same, and build a tobacco warehouse on some locality in Baltimore City selected by the Board of Public Works. The second section of the act, which we have transcribed in full, establishes a governmental agency entirely distinct from the Board of Public Works called the State Tobacco Warehouse Building Commission, and which the act declares is established for the following purposes, first, to rebuild, enlarge and equip warehouses Nos. 3, 4 and 5; and, second, to purchase a suitable site on the water front in Baltimore City in the location mentioned in the act, or to erect thereon a tobacco warehouse with a capacity of at least 8,000 hogsheads, and in case a suitable site cannot be secured in the locality mentioned in the act, the commission is authorized to build on the sites of warehouses "A" and "B" of No. 3 warehouse a modern and fully equipped house for the storage and inspection of tobacco. It is thus clearly apparent that the things authorized to be done by section 2 of the act, and the agency by which they are directed to be done, are entirely different from the things indicated in the title. It seems to be perfectly plain that the title of this act does not indicate in the slightest degree the nature of the proposed legislation. No one looking at the title would suppose for a moment that it was proposed to create such a commission as that established by the act, and to confer upon it the powers and duties therein expressed. The title is so insufficient and misleading as to be obnoxious to section 29 of article 3 of the Constitution, and, therefore, the act must be declared void." In that case the Board of Public Works was composed of three men, and that was the body to which the title indicated the rebuilding was to be entrusted, whereas in the body of the act there were named five other men, who, together with the Board of Public Works, constituted the "State Tobacco Warehouse Building Commission," with certain designated powers. That case, we think, in conclusive of the case at bar on the point last discussed. Here, as we have said, is created a special commission, composed of sufficient members to control the whole operation of improvement and the expenditure of the money

provided by the act, and there is nothing in the title which could be taken to indicate that such a provision would be found in the body of the act. The title of the act is, in our opinion, therefore, deceptive and misleading, and is at variance with the body of the act; and the act is a plain violation of the constitutional provision relied upon by the appellants. It is true that it is not necessary or proper to strike down an entire act because one or more of its provisions is void, unless they are so connected together in subject-matter, meaning, or purpose, that it cannot be presumed the Legislature would have passed the one without the other. *Somerset County v. Pocomoke Bridge Co., supra; Nutwell v. Anne Arundel County, supra.* If there is struck down the assessment against the adjoining property owners, and eliminated the special commission provided for by section 5 of the act, we cannot say that the Legislature would have passed the act in the condition in which it would be left. At least, it is not reasonable to presume that they would have passed it with these two provisions eliminated. It is true that this act was approved by a majority of the voters of Chestertown at the municipal election held in April, 1927. Assuming that this election was free from any legal difficulties, the voters of the town could not cure that defect in the act. *Weber v. Probey, supra.* While the act here does not require any notice to be given, nor does the charter of Chestertown require any notice of an election, yet, under the practice in that town, notice of the election was advertised for at least three weeks prior to the date thereof, in which notice of the election the only reference to the proposed bond issue was: "There will also be voted upon the question of bonding the town for $100,000 for improved roadways, etc.", and it was not until two days before the election that a publication was made of any part of the act. We do not mean to be understood as holding that this was necessary for the validity of the act, but it does indicate that information to the voters of Chestertown by publication of the terms of the act was not supplied, so far as the record discloses, either by the opponents or proponents of the measure, until two days before the election, which certainly

would not tend to lessen the deceptive and misleading character of the title. Being of the opinion that chapter 359 of the Acts of 1927 is void as repugnant to section 29 of article 3 of the Constitution, we are of the opinion that the order of June 13th, 1927, is erroneous and must be reversed.

> *Order reversed, and case remanded that an order may be passed in conformity with the views herein expressed, with costs to the appellants.*