## WASHINGTON SUBURBAN SANITARY COMMISSION *v.* BUCKLEY ET AL.

[No. 108, October Term, 1950.]

204

*Decided February 8, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Nicholas Orem, Jr.,* with whom were *T. Howard Duckett and Duckett, Gill & Anderson,* on the brief, for appellant.

*H. Winship Wheatley, Jr.,* with whom were *H. Winship Wheatley* and *Jackson Brodsky,* on the brief, for appellees.

MARBURY, C. J., delivered the opinion of the Court.

In this case, as in *Funk v. Mullan Contracting Co.,* 197 Md. 192, 78 A. 2d 632, an important question involved is the proper construction of Sec. 15 of Article III of the Constitution of the State. Because of this, we arranged that it should be argued immediately after the argument in the Funk-Mullan case. Both cases involve the validity of acts passed at the 30-day session of the Legislature in 1950. The act in this case is Chapter 93, which repeals certain sections of the Code of Public Local Laws of Montgomery County and of Prince George's County, and enacts in lieu thereof a new section which requires that on and after July 1, 1950, the Washington Suburban Sanitary Commission shall make all water and sewer house connections from the watermains or sewers to the property lines of the abutting lots, and no plumber shall, after said date, make any house connection except as agent or contractor for the said Commission. The Commission is authorized to make reasonable charges. The Act further contains a section known as Section 3, which reads as follows:

"And be it further enacted, That this Act is hereby declared to be on [an] acute emergency measure and necessary for the immediate preservation of the public health and safety and having been passed by a yea and nay vote, supported by three-fifths of all of the members elected to each of the two Houses of the General Assembly of Maryland, the same shall take effect from the date of its passage."

It appears that prior to January 1, 1949, the Washington Surburban Sanitary Commission, which is a municipal corporation operating in parts of Prince George's and Montgomery Counties surrounding the District of Columbia, was empowered to, and did, make house connections, but, by Chapter 57 of the Acts of the

Extra Session of 1948, it was given a discretion to discontinue that practice and to authorize connections to be made by plumbers employed by property owners. This it did by regulations passed October 27, 1949, effective January 1, 1949. By Chapter 93 of the Acts of 1950, it was directed to make these connections after July 1, 1950.

The appellees, who are owners of improved real estate and residents, some in Prince George's County and some in Montgomery County, all receiving services from, and paying taxes to and for the benefit of the Washington Suburban Sanitary Commission, and all master plumbers licensed and registered in the Suburban Sanitary District by the Commission, filed a bill in the Circuit Court for Prince George's County to have Chapter 93 of the Acts of 1950 declared unconstitutional and void in that, among other things, it is beyond the scope of the constitutional limitations provided in Sec. 15 of Article III of the Constitution. The Sanitary Commission demurred. The demurrer was overruled. The defendants answered, and the complainants thereupon filed a motion for summary judgment. This was granted, and an injunction was issued restraining the Commission from performing any functions or putting into effect any regulations or ordinances pursuant to Chapter 93 of the Acts of 1950. From that decree, the Sanitary Commission appealed.

Unlike the case of *Funk v. Mullan, supra,* no contention is made here, and none could be made, that the complainants have no power to bring the suit. They are all owners of property for which the services may have to be performed, and they are all plumbers who may be prohibited from doing the work which they have been doing for the past year. They have, therefore, special interests which are affected by the provisions of the act. It is unnecessary to consider whether, as taxpayers, they also have the right to object because the act imposes additional burdens upon them.

The question of the validity of Chapter 93 is raised with respect to clauses (2) and (3) of Sec. 15 of Article III. The applicable part of that section reads as follows:

"In any of said thirty-day sessions in even years, the General Assembly shall consider no bills other than (1) Bills having to do with budgetary, revenue and financial matters of the State Government, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare."

Clause (3), the general public welfare provision, was fully discussed in *Funk v. Mullan, supra*. It cannot be successfully contended that a purely local statute, affecting only parts of two counties, and having no application, either financial or otherwise, to any other part of the State, can be in the general public welfare. It can only be upheld, if at all, under clause (2) which allows legislation dealing with an acute emergency.

The first question that arises is whether the Legislature, by so declaring, can bring this legislation within clause (2). It is, of course, one of the well recognized powers of the courts to determine the constitutionality of legislation, and it is the province and duty of the courts to interpret the Constitution and to construe its provisions in order to ascertain its applicability to a given statute. *Hillman v. Stockett*, 183 Md. 641, 645, 39 A. 2d 803. In this case, we have a declaration by the Legislature that an acute emergency exists, and we have to determine whether this prevents the courts from deciding otherwise.

In the referendum amendment to the Constitution, Article XVI, Sec. 2, it is provided that no law shall take effect until June 1, after the session, "unless it contain a Section *declaring* such law an emergency law", etc. The referendum amendment permits an act containing such a provision to go into effect at once, and it stays in effect, even if a referendum is asked for, until and unless the vote at the polls is adverse. We have held in a number of cases that, under these circumstances and under this wording of the Constitution, the courts

have no power to pass upon the question whether there is an emergency if the Legislature has made the necessary declaration. In other words, it is the declaration of an emergency which produces the effect of putting the act in force at once, and not the actual question whether or not an emergency exists. *Culp v. Commissioners of Chestertown*, 154 Md. 620, 623, 141 A. 410. *Gebhardt v. Hill*, 189 Md. 135, 54 A. 2d 315. *Hammond v. Lancaster*, 194 Md. 462, 71 A. 2d 474. There is, however, another section of the Constitution which is more nearly analogous to the provision in Sec. 15 of Article III. That is Article XI, Sec. 7, which provides that no debts shall be created by the Mayor and City Council of Baltimore unless that debt is authorized by an act of the General Assembly, and by an ordinance of the Mayor and City Council submitted to the legal voters of the City, but the Mayor and City Council is authorized to borrow any amount at any time to provide for any emergency arising from the necessity of doing certain things.

In 1937, by Chapter 94, the Legislature directed a board, composed of the members of the Board of Estimates and the Board of Election Supervisors of Baltimore, to purchase a sufficient number of voting machines for use in all polling places in the city in all elections after the 1st of January, 1938. That act contained a clause declaring it to be an emergency law, and necessary as a police measure for the immediate regulation of elections in Baltimore City. In obedience to the mandate of the act, the Mayor and City Council, by Ordinance No. 694, authorized the City to issue obligations not exceeding $1,250,000.00 to meet requisitions of the Board. A taxpayer filed a bill of complaint in which he asked that the ordinance be declared invalid because it attempted to borrow money on the City's credit without a prior enabling act and without submission to the voters of the City. In the case which eventually reached this court, it was held that the provision in Chapter 94 of the Acts of 1937, while it did not follow the literal

language of the Referendum Amendment of the Constitution, declared it to be an emergency statute within the meaning of that referendum, and therefore the act went into effect on March 24, 1937, which was about three weeks before the ordinance was passed; therefore, there was a prior enabling act. As to the emergency clause under the Referendum Act, the court followed *Culp v. Commissioners of Chestertown, supra,* and held that the determination of the question of an emergency under the referendum clause was not judicially reviewable.

When it came to the ordinance, which provided for the issuance of obligations of the City without its submission to the voters, the court said that authority could only be found in Article XI, Sec. 7, to take such action in an emergency. The court then proceeded to determine whether there was such an emergency, and said that was a question of fact, and, in so holding, it distinguished between the two clauses in the Constitution in the following words: "Primarily a legislative finding is sufficient but, *except where the power to determine the question is specifically granted, as in article 16, § 2,* * * * by no means conclusive proof that an emergency exists. * * * such a finding is, however, always entitled to great weight and will not be set aside or annulled unless it is clearly and unmistakably appears that it is erroneous." (Emphasis supplied.) *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, 693-694, 192 A. 531, 543.

This conclusion was repeated in *Geisendaffer v. Mayor and City Council of Baltimore,* 176 Md. 150, 152-153, 3 A. 2d 860, 4 A. 2d 460, and in the concurring opinion of Judge Offutt, 176 Md. on page 159, 3 A. 2d on page 461, where he said: "The sole question before this court is one of fact, is there an emergency?" The case involved the issuance of certificates of indebtedness by the City without submission to popular vote, and the validity of the ordinance depended upon the finding that an emergency existed under Article XI, Sec. 7. The court determined this by a judicial finding.

In another case, the City passed an ordinance declaring the existence of an emergency arising from the necessity of preserving the health, safety and sanitary condition of the City, and, for the purpose of improving the sanitary sewage system of the City in certain areas, provided for an increase of the City debt by the issuance of certificates of indebtedness not to exceed two and one-half million dollars. This ordinance was not submitted to the voters of the City, and it was challenged on the ground that it was not so submitted. The City contended that an emergency existed, and therefore the ordinance did not have to be submitted under the constitutional provision. The chancellor decided on the facts that no emergency did exist, and decreed the ordinance was void, and, on appeal, that decree was affirmed. This court discussed the meaning of "emergency", and held that the proper definition as the word was used in Article XI, Sec. 7, of the Constitution, was a "sudden, unexpected and unforeseen condition * * * of such public gravity and exigency as to require forthwith municipal action for which the requisite public money is not presently procurable by the usual and regular methods of acquiring funds for municipal use." It did not accept the declaration of the ordinance that an emergency existed, but its action affirmed, without any discussion of the matter, the right of the court to determine whether or not an emergency existed as a fact. *City of Baltimore v. Hofrichter*, 178 Md. 91, 100, 11 A. 2d 375.

The emergency clause attached to Chapter 93 is in form that required by the Referendum Amendment to put the act into effect at once, except that the word "acute" is prefixed to the word "emergency" in an apparent attempt to bring it also within Sec. 15 of Article III. We think, however, that the result is not to foreclose the courts from determining whether such an emergency existed. Sec. 15, unlike the referendum section, does not predicate any result upon the *declaration* of an emergency, and we think it means, as does the Baltimore City provision, that there must be an *actual* acute emergency

to render the legislation valid, and that this emergency is one to be determined by the courts.

The argument is pressed upon us that even though this be so, a declaration by the Legislature is entitled to such weight that, unless there are facts to the contrary, it must be sustained, and it is pointed out that in the case before us, no facts were produced. We, of course, attach weight to the declaration of the Legislature, but we do not think it has in this case the strong effect contended for by appellant. We think the question may be readily decided, as it was, upon bill and answer. The answer admits, categorically, that no acute emergency existed requiring the passage of Chapter 93. This is a fact which undoubtedly the appellant could admit, although it could not, of course, confer jurisdiction on the court by an admission. But in the consideration of the question whether an emergency existed, such an admission could be considered in connection with other matters on the record. These show that the only purpose of the act was to put back into the Sanitary Commission a duty which it had exercised its discretion only a year before to avoid, and that there is nothing to show why it was necessary in January, 1950, to change what had been in effect a year, and what is in general effect elsewhere, and to prevent house owners from making connections through their own plumbers employed by them. The legislature itself, in spite of its declaration, did not seem to consider that any great emergency existed, because, while it provided that the act should go into effect on March 28, 1950, the body of the act provided that the change should be made on and after July 1, 1950. Under the circumstances, we are unable to find any acute emergency or any emergency whatsoever, and the decree of the chancellor will be affirmed.

*Decree affirmed with costs.*